[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11508
_____

D.C. Docket No. 1:15-cv-20902-AOR


JUAN ANDRES RODRIGUEZ,

and all other similarly situated under 29 U.S.C. § 216(b),

Plaintiff-Appellant,

versus

GOLD STAR, INC.,

FIRST CLASS PARKING SERVICES, CORP.,

et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 7, 2017)

Before MARCUS, ANDERSON, and GINSBURG,[*] Circuit Judges.

ANDERSON, Circuit Judge:

---

[*]    Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

In this Fair Labor Standards Act ("FLSA") case, Appellant Juan Rodriguez argues that the cars that he parks in his job as a valet parker are the interstate "materials" that bring his employer within the definition of an enterprise engaged in commerce such as to provide FLSA coverage.

Rodriguez brought this action against his former employers, Gold Star, Inc., First Class Parking Services, Corp., and First Class Parking Systems LLC, and individual defendants Sebastian Lopez and Jorge Zuluaga. Rodriguez worked for these associated companies as a valet runner and parker at three locations in Miami Beach from April 1, 2012, to November 15, 2014. He parked cars and retrieved them; he did not wash them, handle tickets, or answer the phone. At this employment, he worked an average of 100 hours per week and while he was always paid for his hours, he was not paid the overtime premium for the hours he worked beyond 40 hours.

The parties filed cross motions for summary judgment and the district court granted the Defendants' and denied the Plaintiff's. Rodriguez moved for reconsideration, which the court denied because he could not satisfy any of the three possible reasons for reopening. Rodriguez now appeals.

Of the several ways an employee might be covered under the FLSA, in this appeal Rodriguez argues only that he was covered because his employer was

2

subject to enterprise coverage under the "handling clause" of the "enterprise

coverage prong."  The "enterprise coverage prong" provides as follows:

> "Enterprise engaged in commerce or in the production of
> goods for commerce" means an enterprise that--
>> (A)(i) has employees engaged in commerce or in
>> the production of goods for commerce, or that has
>> employees handling, selling, or otherwise working
>> on goods or materials that have been moved in or
>> produced for commerce by any person; and
>> (ii) is an enterprise whose annual gross volume of
>> sales made or business done is not less than
>> $500,000 (exclusive of excise taxes at the retail
>> level that are separately stated);

29 U.S.C. § 203(s)(1)(A).  Rodriguez's sole argument on appeal is that the cars he

parked and thus "handled" were "materials" within the meaning of

§ 203(s)(1)(A)(i).[1]  Because it is undisputed that Rodriguez did "handle" the cars,

and undisputed that the cars "have been moved in or produced for commerce," and

undisputed that the sales volume threshold is met, the dispositive issue in this

appeal is whether the cars were "materials."[2]

---

[1]     Rodriguez does not challenge the conclusion of the court below that he does not qualify
for individual coverage.  Moreover, it is clear that there is no enterprise coverage under the first
clause of § 203(s)(1)(A)(i)—i.e., an enterprise that "has employees engaged in commerce or in
the production of goods for commerce."

[2]     Rodriguez is correct that the local nature of the enterprise's business will not preclude
enterprise coverage if the cars were "goods" not subject to the ultimate consumer exception or if
the cars were "materials," and if the cars "have been moved in or produced for commerce."  See
Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217 (11th Cir. 2010).  However,
Rodriguez does not challenge the obvious conclusion that the cars, if they are "goods," are
within the ultimate consumer exception and thus would not trigger enterprise coverage.
Accordingly, Rodriguez recognizes that he can prevail in this appeal only if he can demonstrate

3

We addressed the scope of the term "materials" in a comprehensive opinion in Polycarpe v. E&S Landscaping Service, Inc., 616 F.3d 1217 (11th Cir. 2010), in the similar context of "local service providers to customers within the state of Florida." 616 F.3d at 1219. Specifically, we looked at the addition of the words "or materials" in the 1974 amendment to the Act. First, we rejected the "coming to rest" doctrine, whereby courts required the employer to be the one who brought the good or material into the state; if the material was purchased locally, the doctrine held, then the goods or materials could not qualify, despite their out-of-state origin. Id. at 1221. We held that interpretation was at odds with the plain language of the statute. Id.

Then we turned to the harder question of what Congress meant when the 1974 Amendment added "or materials," thus making the "handling clause" apply not only to "goods" but also to "materials." The term "goods" is defined in the Act:

> "Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

that the cars are "materials."

29 U.S.C. § 203(i). By contrast, "materials" is not defined in the Act. In analyzing the interplay of the terms "goods" and "materials," we held that "materials" are necessarily not "goods" and thus are not subject to the exclusion in the "goods" definition for items "after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." Polycarpe, 616 F.3d at 1222. This exclusion is known as the ultimate consumer exception. In other words, we held that the definitions of "goods" and "materials" are mutually exclusive, and that the ultimate consumer exception applies only to "goods." In arriving at these conclusions, we applied several basic canons of statutory interpretation, referred to dictionary definitions and focused on the dictionary definition that avoided overlap with the statutory definition of "goods," thus avoiding an implied repeal of the definition of "goods" or the ultimate consumer exception, which is part of that definition. Id. at 1222-24. This process led us to "the most accurate view of Congress's intent for the interplay between 'goods' and 'materials,'" to wit: that the term "materials" "means tools or other articles necessary for doing or making something." Id. at 1223-24.

We explained that this interpretation of the statute comported with legislative history, which indicated that the addition of the term "materials" reflected a congressional intent to include coverage of the handling of items consumed by the employer's business, "'as, e.g., the soap used by a laundry.'" Id.

5

at 1224 (quoting S. Rep. No. 93-690, at 17 (1974)).  Discussing the example given

in the legislative history of a laundry using interstate soap, we stated that the

legislative history fit within "our view of how 'goods' and 'materials' are related in

the handling clause"—that is "[o]ne could easily consider the soap in this example

as an 'article[] necessary for doing something,' for instance, washing clothes."  Id.

at 1225 (second alteration found in original).   We also found persuasive the

arguments of the Department of Labor, which has issued an opinion letter

suggesting that fast-food employees would be covered  as engaged with

"materials," because of the commercial use by employees of interstate coffee,

cleaning supplies, and cooking equipment.  Id.

    We held that whether an item will be a "material" depended on two things.

First, the item must fit the ordinary definition of "materials" in the context of its

use.  Id. at 1225-26.  Thus plates used by a caterer would be "materials" but those

same plates, for sale at a department store, would be "goods."  Id. at 1226.

Second, we required that the "materials" be used commercially in the employer's

business.  In this regard, the item must have a "significant connection with the

employer's commercial activity."  Id.  Thus, plates purchased for decor by an

accountant's office would not be "materials," because they would not have a

significant connection to the business of accounting.  Id. at 1226-27.

6

Cases relying on Polycarpe have generally recognized that tools purchased by the employer and used by the employees to perform services are "materials." For instance, in Polycarpe on remand, the district court held that the trucks used by the employees in a landscaping business were "materials." Polycarpe v. E & S Landscaping Serv., Inc., 821 F. Supp. 2d 1302 (S.D. Fla. 2011); see also Castro v. Sevilla Props., LLC, 2013 WL 6858398 (S.D. Fla. Dec. 30, 2013) (suggesting that the flashlight, uniform, and cellphone used by an employee of a property rental business were "materials").

Rodriguez's argument that the cars he parked are "materials" stretches its definition beyond what the plain language of the statute or our precedent will allow. The statutory definition of "goods" is very broad and includes not only wares and merchandise but "articles or subjects of commerce of any character." 29 U.S.C. § 203(i). This definition, thus, does not limit "goods" to items ordinarily sold in business. As we stated in Polycarpe, our definition of "materials" must not overlap with that of "goods" lest we in effect repeal part of the definition of "goods" and the operation of its ultimate consumer exception. And indeed we defined materials as the *tools* necessary to do a job. In so crafting this definition, we looked to legislative history, which is instructive in this case. There, Congress used the example of a commercial laundry, with the soap employed to wash the clothing constituting the "materials." The cars that Rodriguez parks are more akin

7

to the clothing than the soap in this example.  Like the dirty clothing brought to the commercial laundry to be washed, the cars are handed to the valet parkers to be parked.  In both cases, the employees perform a service for the customer with respect to the items left in their care.  The employees do something to the cars here, like the employees of the commercial laundry do something to the clothes.  In both cases, the customers' goods are returned to the customer after the service is performed on them.  Neither the cars here nor the clothes in the laundry are tools necessary to do a job; rather, they are the "goods" which are serviced by the employees using tools (like soap in the commercial laundry).

Because we hold that the cars Rodriguez parks are "goods," not "materials," the ultimate consumer exception operates to exclude from the category of covered "goods" the handling of the cars at issue here.  Accordingly, we affirm the decision of the district court granting summary judgment to the Defendants.[3]

AFFIRMED.

---

[3]  We also affirm the district court's denial of Rodriguez's motion for reconsideration.