[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16814

_____

D.C. Docket No. 1:16-cv-20027-MGC

FLOR ANDREA RODRIGUEZ ASALDE, JOHN CONDE,
JAVIER ANTONIO CABRERA SAVINOVICH, and all others
similarly situated under 29 U.S.C. § 216(b),

Plaintiffs - Appellants,

versus

FIRST CLASS PARKING SYSTEMS LLC, a.k.a. 1ST CLASS
VALET SERVICE, SEBASTIAN LOPEZ, JORGE ZULUAGA,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2018)

Before JORDAN and JILL PRYOR, Circuit Judges, and DUFFEY,[*] District Judge.

JORDAN, Circuit Judge:

Flor Andrea Rodriguez Asalde worked as a valet for First Class Parking Systems LLC. She and others who also worked as valets brought claims in a putative collective action under the minimum-wage and overtime provisions of the Fair Labor Standards Act against FCPS and related parties (whom we refer to collectively as FCPS). The district court granted summary judgment in favor of FCPS, but did so based on a misreading of the term "materials" in 29 U.S.C. § 203(s)(1)(A)(i). We therefore reverse and remand.

## I

The FLSA enumerates the employment situations that are covered by its provisions. *See* 29 U.S.C. § 203(s). The plaintiffs here asserted that their employment was covered by the "materials" prong of the "handling clause" under the "enterprise coverage" provision in the Act. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220–21 (11th Cir. 2010). *Cf. Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (addressing "individual coverage" rather than "enterprise coverage"). The "handling clause" provides that an entity is subject to "enterprise coverage" under the FLSA if it "has

---

[*] Honorable William S. Duffey, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

2

employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for [interstate or international] commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). *See also* § 203(b) (defining "commerce").

FCPS moved for summary judgment on several grounds, including that the plaintiffs could not provide evidence that any employees handled any qualifying "goods or materials." The district court agreed and granted summary judgment on this basis alone. The court concluded that the plaintiffs' activity of parking cars did not meet the handling clause's "goods or materials" requirement. It also ruled that the fact that the plaintiffs "handled walkie-talkies, pens, uniforms, valet tickets and other items that originated out of state" was irrelevant to the analysis because "[FCPS] was the ultimate consumer of those goods." *Rodriguez Asalde v. First Class Parking Sys. LLC*, No. 16-cv-20027, 2016 WL 5464599, at *3 n.4 (S.D. Fla. Sept. 29, 2016).

## II

We review the district court's summary judgment order de novo, and view the evidence (and inferences) in the light most favorable to the plaintiffs, who were the non-moving parties. *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 94 (1994); *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1310 (11th Cir. 2007). Based on the record before us, we hold that the evidence the plaintiffs presented

3

sufficed to allow a jury to conclude that uniforms used by FCPS' employees were "materials" within the meaning of § 203(s)(1)(A)(i).

## A

"Goods" and "materials" are distinct (i.e., not overlapping) categories; an object may be a "good" in certain contexts and a "material" in others. *See Polycarpe*, 616 F.3d at 1222, 1226. The term "goods" is defined broadly in the Act. *See id.* at 1222 (quoting 29 U.S.C. § 203(i)). The term "materials" is not defined at all. *See Rodriguez v. Gold Star, Inc.*, 858 F.3d 1368, 1370 (11th Cir. 2017) (decided after the district court's ruling in this case); *Polycarpe*, 616 F.3d at 1222.[1]

In *Polycarpe*, we concluded that "materials" are "tools or other articles necessary for doing or making something." 616 F.3d at 1224. We further held that "where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials.'" *Id.* at 1225. Then, we settled on a test:

> First, whether an item counts as "materials" depends on whether the
> item is serving as a material in context. . . . [T]o count as "materials,"

---

[1] "Goods" (unlike "materials") are subject to an "ultimate consumer exception," under which, if employees "handl[e]," etc., "goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof," then such "handl[ing]," etc., will not serve as a predicate for "enterprise coverage." *Polycarpe*, 616 F.3d at 1222–24. *See also Rodriguez*, 858 F.3d at 1370.

4

an item must [be a] tool[ ] or other article[ ] necessary *for doing or making something. . . .*

Second, for an item to count as "materials" it must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item.

*Id*. at 1226. We also provided multiple examples of what we meant by this test.

First, following the lead of the Senate Report for certain 1974 amendments to the FLSA, we discussed laundry soap. *See id*. at 1224–25. We noted that if a laundromat uses soap to clean clothes handed over by a customer, then it uses the soap as a "material" (a tool or other article necessary for doing or making something) to clean the customer's clothes. *See id*. at 1225.

Second, we looked to a Department of Labor letter. That letter opined that coffee served by a fast-food retailer, as well as the cleaning supplies and equipment that it used, were "materials" for the purpose of this test. *See id*.

Third, we considered the example of china plates. *See id*. at 1226. We noted that "[d]epending on how they are used, china dinner plates . . . could count as either 'goods' or 'materials.' Where a catering business uses the china plates at a client's banquet, the plates count as part of the 'materials' necessary for serving a catered meal." *Id*. But where "an accounting firm . . . uses the same china plates as objects of decoration mounted on its lobby wall, the china plates cannot count as 'materials' because the plates have no significant connection to the business['] accounting work." *Id*. Instead, "[t]he china plates in this example seem likely to

5

count as 'goods' that are subject to the ultimate-consumer exception because the accounting firm is the items' ultimate consumer." *Id*. at 1226 n.9.

Applying this test, and considering the examples we provided, we held in *Polycarpe* that the district court on remand would have to determine whether the following items could be found to be "materials": (1) "shutters containing blades that were evidenced to have been made in Col[o]mbia," sold by the employer and installed by its employees, *id*. at 1227; (2) "burglar alarms with wires, key pads, and other components manufactured out of state," sold by the employer and installed by its employees, *id*.; (3) "paint, tape, and coarse drywall screws" with which employees made "home repairs" for customers, *id*.; and (4) "lawn mowers, edger blades, trucks, pencils, and gasoline" with which employees performed "landscaping tasks" for customers, *id*. at 1228.

Our recent decision in *Rodriguez*, 858 F.3d at 1368, is also informative on this front. In that case, as here, employees of a valet parking company sued under the FLSA. They claimed that the cars they parked were "materials." We held that they were not.

In so holding, we further elaborated on the definition of "materials." We favorably cited the decision of the district court on remand in *Polycarpe*, which had held that "trucks used by the employees in a landscaping business were 'materials.'" *Id*. at 1370–71. We did the same with another district court decision

6

holding that "the flashlight, uniform, and cellphone used by an employee of a property rental business were 'materials.'" *Id*.

Ultimately, we reasoned that cars parked by valets are not "materials" because they are an item *on which* a service is performed rather than the *means* of performing the service. *See id*. at 1371. *See also Polycarpe*, 616 F.3d at 1226 (a material is a "tool[ ] or other article[ ] necessary for doing or making something"). Returning to our "example of a commercial laundry, with the soap employed to wash the clothing constituting the 'materials,'" we reasoned that

> [t]he cars that Rodriguez parks are more akin to the clothing than the soap in this example. Like the dirty clothing brought to the commercial laundry to be washed, the cars are handed to the valet parkers to be parked. In both cases, the employees perform a service for the customer with respect to the items left in their care. The employees do something to the cars here, like the employees of the commercial laundry do something to the clothes. In both cases, the customers' goods are returned to the customer after the service is performed on them. Neither the cars here nor the clothes in the laundry are tools necessary to do a job; rather, they are the "goods" which are serviced by the employees using tools (like soap in the commercial laundry).

*Rodriguez*, 858 F.3d at 1371.

**B**

In this case, the district court held that the plaintiffs could not establish "handling clause" coverage because (1) as we later confirmed in *Rodriguez*, vehicles parked by valets are "goods" subject to the "ultimate consumer" exception, and not "materials," and (2) the walkie-talkies, pens, uniforms, valet

7

tickets, etc. that employees of FCPS used are "goods" and also subject to the ultimate-consumer exception. *See Rodriguez Asalde*, 2016 WL 5464599, at \*3 n.4. Given our decision in *Rodriguez,* the district court's ruling with respect to the vehicles was correct. We therefore turn to the items used by the plaintiffs as valets for FCPS.

The plaintiffs argue that the walkie-talkies, pens, uniforms, valet tickets, etc. that they used in their jobs were "materials." FCPS disagrees, defending the district court's conclusion. Based on the record before us, and our reading of the relevant statutory provisions and precedent, we hold that the plaintiffs have established that there are triable issues sufficient to defeat FCPS' motion for summary judgment. For the present, it is enough for us to analyze and rest our decision on the uniforms that the plaintiffs aver that they had to wear as valets.

Applying the *Polycarpe* test, which focuses on context, first we address whether the uniforms were "tools or other articles necessary for doing or making something." 616 F.3d at 1226. On this record, we think this presents an issue of fact for the jury. *See, e.g.*, *Watkins v. City of Montgomery*, 775 F.3d 1280, 1288 (11th Cir. 2014) ("We acknowledge that the question of whether pay deductions for exempt employees are permissible under the FLSA can present a question of law that falls outside the province of the jury. But that is not necessarily the case, and it was not the situation here."); *Rodriguez v. Farm Stores Grocery, Inc.*, 518

8

F.3d 1259, 1263–64 (11th Cir. 2008) (whether managers of chain of drive-through grocery stores fell within the FLSA's executive exemption was a matter for the jury). FCPS relies on a naked assertion that uniforms "are not necessary to park cars." *See* Appellees' Br. at 8. In one sense, FCPS is of course correct; valets can park cars without being attired in uniforms. But in another, more important sense, FCPS is mistaken because physical necessity is not the baseline for determining whether an item used for work is, in the words of *Polycarpe*, "necessary for doing . . . something," and hence a "material" under the FLSA. 616 F.3d at 1226.

As we noted in *Polycarpe*, an item may qualify as a "material" as long as "a business provides a service *using* [the] item as part of its commercial operations." 616 F.3d at 1225 (emphasis added). The first prong of the test, then, encompasses a wide range of items that employees use in their work even if some possibility exists that the employees could perform their jobs without the items. This reading of the first prong of the *Polycarpe* test is consistent not only with common sense, but also with the primary example of "materials" set out in that case: china plates used by a catering company to cater a banquet. Even though, strictly speaking, it is not impossible to cater a banquet without china plates, the plates nonetheless count as "materials" in the hands of the caterer because the caterer uses them to provide a service—feeding customers.

9

Similarly, here, there is evidence that FCPS uses the plaintiffs' uniforms—which according to the plaintiffs are mandatory, *see* Affidavit of Cabrera Savinovich, D.E. 44-1 at ¶ 48—to provide valet services because they offer a way for customers to identify the valets (and to see them as professional and trustworthy). It makes no difference that FCPS could possibly operate its valet business without requiring its employees to wear uniforms. The bottom line is that FCPS "us[es]" the uniforms to provide a service, which is sufficient to satisfy the first prong of the *Polycarpe* test. *See generally* Anat Rafaeli & Michael Pratt, *Tailored Meanings: On the Meaning and Impact of Organizational Dress*, 18 Acad. of Mgmt. Rev. 32, 47–48 (Jan. 1993).

The second prong of the test that we laid out in *Polycarpe* requires "a significant connection [between the item and] the employer's commercial activity"—i.e., that "the business [does] not just somehow internally and incidentally consume the item." 616 F.3d at 1226. FCPS asserts that the plaintiffs' uniforms lack this "significant connection." *See* Appellees' Br. at 8. But it provides no real argument on this point—it just states a conclusion and cites to one case, *Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433 (N.D. Tex. 2012), in support. Assuming that the reasoning from *Mendoza* is incorporated into its brief, we reject the contention advanced by FCPS.

The district court in *Mendoza* granted summary judgment to an employer in an FLSA case in part on the basis that the uniforms worn by employees at a car wash were not sufficiently connected to the employer's commercial activity to be "materials." *See id*. at 442. It acknowledged that uniforms "may be important to the business in identifying or advertising itself," but concluded that they were not "significant[ly] connect[ed] [to] the employer's commercial activity" because they did not advance the task of making customers' cars cleaner. *See id*.

Assuming without deciding that its analysis is sound, *Mendoza* is distinguishable from the case before us. In our view, the car washers' uniforms in *Mendoza* were less connected to the employer's commercial activity than the valets' uniforms in this case. A jury could find that a valet's uniform is distinctive because it identifies for customers the person to whom they should entrust their vehicle. A jury could similarly find that customers' ability to identify the valet is essential to the valet company's commercial activity because if customers cannot identify the valet they may be unable or unwilling to use the valet company's services. A car washer's uniform, by contrast, appears less connected to the car wash's commercial activity because customers can easily locate a car wash (and see their cars being washed) even if its employees do not wear uniforms. Thus, even though an employee's uniform may not always be sufficient to satisfy the

11

second prong of the *Polycarpe* test, we conclude that the plaintiffs' uniforms are sufficient to create a jury issue in this case.

In sum, we hold that a reasonable jury could find that the plaintiffs' FCPS uniforms are "materials" under the FLSA.

## III

To show that enterprise liability applies in a given case, an FLSA plaintiff must also establish that the "material" at issue "ha[s] been moved in or produced for [interstate or international] commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). The district court apparently concluded that the evidence at summary judgment established that the plaintiffs met this requirement with respect to the relevant items, including the uniforms. *See Rodriguez Asalde*, 2016 WL 5464599, at *3 n.4 (observing that the items in fact "originated out of state").

The plaintiffs defend the district court's conclusion. They point out that their uniforms have "Made in China," "Made in Jordan," and "Made in Colombia" printed on their labels. FCPS disagrees, generally arguing that the location printed on an item is irrelevant to determining where it originated. *See* Appellees' Br. at 11.

Given the case's summary judgment posture, FCPS is wrong. A label reflecting an item's place of manufacture is admissible evidence and suffices to support a jury finding as to origin, as all courts reaching the question seem to

12

agree. *See, e.g.*, *United States v. Brantley*, 68 F.3d 1283, 1288 (11th Cir. 1995) ("the weapon, which was seized in southern Florida, bore an imprint indicating that it had been manufactured in Atlanta, a clear indication of interstate commerce"); *United States v. Burdulis*, 753 F.3d 255, 262–64 & n.8 (1st Cir. 2014) (affirming interstate nexus aspect of conviction solely on basis of inscription, and collecting similar cases from other circuits). Indeed, FCPS does not cite any contrary authority. The labels here, we conclude, are sufficient to create a jury question on the movement of the uniforms in international or interstate commerce.

## IV

The district court correctly ruled that the vehicles parked by the plaintiffs are "goods" subject to the ultimate consumer exception, and not "materials" under the FLSA. Nevertheless, FCPS was not entitled to summary judgment on the plaintiffs' FLSA claims. Viewing the evidence in the light most favorable to the plaintiffs, a jury could reasonably find that the uniforms they had to wear as valets for FCPS constitute "materials" under § 203(s)(1)(A) of the FLSA. The labels on the uniforms, which reflect foreign manufacture, similarly create a jury issue as to

13

whether the uniforms moved in international or interstate commerce under § 203(s)(1)(A)(ii).[2]

We reverse the district court's grant of summary judgment in favor of FCPS and remand for further proceedings consistent with our opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

---

[2] Given these rulings, we need not reach the other issues presented, such as whether there is evidence that *other* items used by the plaintiffs in their work as valets were "materials" or moved in international or interstate commerce.

DUFFEY, District Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that the trial court ruled correctly that the vehicles parked by the plaintiffs are "goods" subject to the ultimate consumer exception, and not "materials" under the FLSA. Recent Eleventh Circuit precedent dictates this result. *Rodriguez*, 858 F.3d at 1370.

I do not agree with the majority's interpretation of the term "materials" under the FLSA, or its ultimate conclusion that "the evidence the plaintiffs presented sufficed to allow a jury to conclude that uniforms used by FCPS' employees were 'materials' within the meaning of § 203(s)(1)(A)(i)." Maj. Op. at 3-4. Circuit precedent does not support that uniforms in the context of this case are "materials."

In *Polycarpe*, the Eleventh Circuit stated that "whether an item counts as 'materials' depends on whether the item is serving as a material in context." *Polycarpe*, 616 F.3d at 1226. We said, "to count as 'materials,' an item must fall within the word's ordinary meaning within the FLSA handling-clause context: as tools or other articles necessary for doing or making something." *Id.*; *see also Rodriguez*, 858 F.3d at 1370-71 ("Cases relying on *Polycarpe* have generally recognized that tools purchased by the employer and used by the employees to perform services are 'materials.'"). The *Polycarpe* court, in creating this context-focused necessity test, sought to ensure that only items "necessary for

15

doing [(service)] or making [(manufacturing)] something" are the focus of the handling clause analysis. That is, if an item is necessary to perform the service or manufacture the good, its origin is relevant. If the item is merely useful in, or incidental to, performing the service or manufacturing the good, its origin is not germane to the handling clause analysis.

Second, for an item to count as a "material," it must have a "significant connection with the employer's commercial activity." *Id.*

The majority relies on the language in a Senate Report to advocate for a new standard to allow items used in a business to determine if the FLSA applies under the *Polycarpe* two-part test. Maj. Op. at 9-10. Specifically, the majority relies on language in S. Rep. 93-690 to state that use alone is sufficient to meet the first part of the *Polycarpe* test for "material." That is, even an unnecessary item, if not locally produced, can constitute a "material" if the item was useful to the provision of a service. Reliance on legislative history and agency interpretation,[1] however, is

---

[1]    The majority opinion relies on the following guidance set forth in a January 22, 1997, Department of Labor ("DOL") opinion letter:

> Under the enterprise provisions of the FLSA[,] an employer does not have to have employees 'engaged in commerce' directly provided that the enterprise 'has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. This literally means that any products, supplies, or equipment used by employees of the enterprise that were produced or shipped from outside the State (even though purchased by the enterprise from suppliers within the State) would cause the employees to be covered. For example, the coffee served, cleaning supplies

16

not necessary to understand or apply the *Polycarpe* test, and reliance upon it here leads to the wrong result reached by the majority. *Polycarpe*, in the section of the opinion upon which the majority relies, simply states that items such as soap, which are fundamental to the operation of a business that launders clothing, are "materials" for purposes of the handling clause. *Polycarpe* does not suggest that items such as uniforms, which are not necessary to the business of valet parking (which the majority admits), are "materials." The majority's relaxed *Polycarpe* test would make virtually every business that uses items not locally made subject to the FLSA, or at least a question for a jury to decide. This approach obscures the clarity of the *Polycarpe* test and does not align with our precedent.

---

utilized, cooking equipment (ranges fryers, grills) operated, etc., that have been produced outside of or shipped by <u>any person</u> from outside the State, would trigger this provision.

*See* Op. Letter, Fair Labor Standards Act (Dep't of Labor Jan. 22, 1997), 1997 WL 958726. But "when deference is applied to [] questions of statutory interpretation, such as an agency's interpretation of the statutory provisions that concern the scope of its own authority, it is [] troubling." *Pereira v. Sessions*, No. 17-459, 2018 WL 3058276, at \*14 (U.S. June 21, 2018). As Justice Kennedy stated recently in *Pereira*, "it seems necessary and appropriate to reconsider . . . the premises that underlie *Chevron* and how courts have implemented that decision." *Id.* "The proper rules for interpreting statutes and determining agency jurisdiction and substantive agency powers should accord with constitutional separation-of-powers principles and the function and province of the Judiciary." *Id.*

Even though *Polycarpe* also cited the DOL opinion letter, it did so only for the limited reason to support the definition of "handling" as to "have or cause to pass through one's hands in commercial transactions" or "to trade in: engage in the buying, selling, or distributing of (a commodity)" or "[t]o have in hand or pass through one's hands in the way of business; to trade or deal in; to buy and sell." 616 F.3d at 1226. What is obvious in this case is that, for the purpose of the FLSA, FCPS is in the business of parking cars. It does not engage in the selling, buying, or distributing of uniforms and it does not handle them. Simply put, the wearing of uniforms is not a necessary part of the valet parking business.

17

In applying the *Polycarpe* two-part test, I do not believe any reasonable juror would find that FCPS' employees' uniforms were (i) "necessary" for FCPS' business or (ii) "significantly connected to [FCPS'] commercial activity." The necessity of a uniform in performing a valet parking service is unlike the necessity of a launderer's soap to clean a customer's clothing, a security guard's use of a handgun to protect a premise, or a landscaper's use of his truck to transport heavy-duty equipment to his clients' properties—all of which are essential to the operation of the business in question. *See, e.g.*, *Dixon*, 2011 WL 2182349, at \*6 (concluding that handguns are "necessary" to the job of security guard); *Polycarpe v. E & S Landscaping Service, Inc.*, 821 F. Supp. 1302, 1307 (S.D. Fla. 2011); *Polycarpe*, 616 F.3d at 1225.

The majority's relaxed "materials" test erodes the disciplined two-part test announced in *Polycarpe*. Under the *Polycarpe* test, and assuming the determination of whether an item such as a uniform is a question of fact for the jury to decide, I find that a valet "uniform" is not, in this context and on the record here, a tool or article necessary to the valet business, and a reasonable juror would not find otherwise.

For these reasons, I would affirm the trial court.

18